**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

SPORTS SUPPLEMENT SOUTH, INC.
STEVE H. TAPSCOTT,

    Appellant,

v.                              Civil Action No. 3:05cv806

KEITH L. PHILIPS,

    Appellee.

**MEMORANDUM OPINION**

Sports Supplement South, Inc. ("Sports Supplement") and Steve H. Tapscott filed this appeal from the United States Bankruptcy Court for the Eastern District of Virginia asserting that the Bankruptcy Court erred in finding that periodic payments made by Sports Supplement South to Tapscott's ex-wife, Elizabeth Rinehart, were in the nature of alimony rather than in the nature of a property settlement. The parties agreed to submit the case for decision on the briefs. Because the Bankruptcy Court's finding that the weekly payments were intended as spousal support are not clearly erroneous, the Bankruptcy Court's decision is affirmed.

**I.**

Elizabeth D. Rinehart, the debtor, and Steve H. Tapscott were married on August 7, 1993. Rinehart was employed by and served as a director and officer for Sports Supplement, a Virginia corporation wholly owned by Tapscott. On December 15, 2000,

Rinehart and Tapscott separated.   On January 12, 2001, the two entered into a marital agreement.   This agreement, titled "Agreement and Stipulation in Accordance with Sections 20-109 and 20-109.1 Code of Virginia, 1950, as Amended" ("Marital Agreement")[1], was incorporated into the final decree of divorce entered on October 10, 2001.

On November 18, 2002, Rinehart filed a petition for relief under 11 U.S.C. Chapter 7, along with bankruptcy schedules and a statement of financial affairs.   Keith Phillips was appointed as the Chapter Seven Trustee (the "Trustee").   Based upon the Marital Agreement, the Trustee determined that Rinehart was entitled to receive certain sums from Tapscott and Sports Supplement South.

The Marital Agreement contains a section entitled "Disposition of Marital Property." (Marital Agreement ¶ 15)   Within that section, there is a subsection entitled "Virginia Corporation known as Sports Supplement South, Inc."   In the Marital Agreement, Rinehart "waive[d] all of her interest in and to Husband's stock in the Corporation . . . and all interest she may have in the Corporation and its assets. . .."   (Marital Agreement at p. 7.) The Marital Agreement continues:

---

[1] The Marital Agreement appears in the record as Exhibit 1 to the COMPLAINT TO DETERMINE EXTENT, VALIDITY AND PRIORITY OF ESTATES'S INTEREST IN PROPERTY RIGHTS, TO COMPEL TURNOVER OF PROPERTY OF ESTATE AND FOR DECLARATORY RELIEF Adv. Pro. No. 04-03086-DOT (Docket No. 1).

In consideration of Wife's resignation as a corporate officer and/or director and waiver by her of her interest in Husband's stock and in the Corporation, the parties agree Wife shall be entitled to the following:

(a) Until Wife obtains a full time job, the Corporation shall pay the Wife a gross weekly amount of $600.00.

(b) Once Wife obtains full time employment, the Corporation shall pay to the Wife a gross weekly income of $250.00.

(c) If Wife has obtained full time employment, the Corporation shall pay Wife the gross weekly income of $250.00 per week until October 1, 2003. (The 18th Birthday of [Rinehart's daughter]). At this time, the Corporation shall then pay Wife a gross weekly income of $400.00.

(d) The Corporation shall maintain health, life and dental insurance upon the Wife until a final decree of divorce between the parties is entered by a Virginia Court.

All such payments hereunder shall be timely made on a weekly basis at the Corporation's normal weekly pay period. The Corporation shall withhold from Wife's weekly income check State and Federal taxes, Social Security taxes, Medicare, etc., and shall timely pay all governmental agencies any monies due. The Corporation shall comply with Federal and State tax regulations in withholding such monies form [sic] Wife's income. On or before January 31st of each year, the Corporation shall furnish Wife a W-2 form for tax purposes.

Husband personally guarantees each payment due wife under the terms hereof. Should the Corporation fail for any reason to make a timely payment, Husband shall pay to the Wife the gross weekly sum owed to Wife for each payment missed. For tax purposes, such payments made by Husband shall be deemed spousal support; however, the amount paid shall be as set out herein and not modifiable by court order.

3

(Marital Agreement pp.7-8.)   Several pages later in a separate section entitled "Waiver of Other Rights to Support and Maintenance," the Marital Agreement also provides:

> The Wife acknowledges that the foregoing provisions for her, together with her anticipated income from other sources <u>will provide for her support and maintenance</u> and that the foregoing, considering all of the Wife's circumstances, is fair, adequate and satisfactory to her and is in the keeping with her accustomed standard of living and her reasonable requirements, giving consideration to her own ability to provide for her own support.
>
> THE WIFE, THEREFORE, WAIVES ANY AND ALL CLAIM TO SUPPORT AND MAINTENANCE FOR HERSELF AND HEREBY RELEASES AND DISCHARGES THE HUSBAND ABSOLUTELY AND FOREVER FOR THE REST OF HER LIFE, FROM ANY AND ALL CLAIMS AND DEMANDS, PAST, PRESENT OR FUTURE, FOR SUPPORT, MAINTENANCE OR LUMP SUM SETTLEMENT.

(Marital Agreement ¶ 18) (emphasis added, capitalization in original).

On May 25, 2004, the Trustee initiated adversary proceedings in the Bankruptcy Court, seeking a determination of the extent, validity and priority of the estate's interest in sums due to Rinehart from Tapscott and Sports Supplements pursuant to the Marital Agreement.  The Bankruptcy Court held that the debt owed to Rinehart by Sports Supplement and guaranteed by Tapscott was in the nature of maintenance and support not a property settlement. (Op. at 4-5.)  The Bankruptcy Court, which initially decided this issue

from the bench, restated it's holding in it's opinion and based its determination on the following facts:

(1) The weekly payments due were calibrated so as to provide the debtor ample support.

(2) The payments would be adjusted with the change of circumstances in the debtor's life.

(3) The Marital Agreement states that the payments to Rinehart "will provide for her support and maintenance and that the foregoing, considering all of the Wife's circumstances, is fair, adequate and satisfactory to her and is in keeping with her accustomed standard of living and her reasonable requirements. . .."

(4) If Sports Supplements did not make the payments to Rinehart, Tapscott would be required to, and his payments would be considered spousal support.

The Bankruptcy Court held that, because the payments were in the nature of maintenance and support rather than settlement property, the "post-petition spousal support payments unmatured on the date of the filing of the petition are not property of the estate and are not recoverable by the trustee under [11 U.S.C.] § 541(a)(5)(B)." (Op. at 7.) Tapscott and Sports Supplement have appealed only the Bankruptcy Court's finding of fact that the periodic payments are in the nature of support and maintenance.

## II.

This Court reviews the Bankruptcy Court's findings of fact for clear error and gives "due regard" to the Bankruptcy Court's determinations of witness credibility. Fed. R. Bankr. P. 8013; In re Catron, 164 B.R. 912, 915 (E.D. Va. 1994) aff'd, 43 F.3d 1465

(4th Cir. 1994). The Fourth Circuit has held that "[t]he proper test of whether payments are alimony lies in proof of whether it was the intention of the parties that the payments be for support rather than as a property settlement." Melichar v. Ost, 661 F.2d 300, 303 (4th Cir. 1981). To determine whether the debt is in the nature of support, the court should look to the "mutual or shared intent of the parties." Tilley v. Jessee, 789 F.2d 1074, 1077-78 (4th Cir. 1986). A court should look at "the true intent of the parties rather than the labels attached to an agreement . . .." Id. at 1077.

Consistent with this view, other courts have held that "[i]n determining whether a particular debt is in the nature of alimony, maintenance, or support, the Court is not bound by the characterization used in the decree but must examine the underlying purpose of the obligation." In re Neely, 59 B.R. 189, 193 (Bkrtcy. D.S.D. 1986) (citing In re Williams, 703 F.2d 1055 (8th Cir. 1983)); see In re Brody, 3 F.3d 35, 38 (2nd Cir. 1993) (holding that "the label that the parties attach to a payment is not dispositive; the court must look to the substance, and not merely the form, of the payments" and collecting cases, including Tilley, in support of that proposition.)

In Catron, this Court reviewed and adopted a four factor test developed in Kettner v. Kettner, 1991 WL 549386 (E.D. Va. 1991). 164 B.R. at 919 (citing Kettner v. Kettner, 1991 WL 549386 (E.D.

6

Va. 1991)).  The four factor test examines (1) the actual language of the agreement; (2) the financial situation of the parties at the time the agreement was entered into; (3) the function served by the obligation at the time of the agreement; and (4) whether there is evidence of overbearing that would cause the court to question the intent of either spouse.  Id.

Tapscott and Sports Supplement assert three arguments concerning the payments: (1) that the weekly payments are in the nature of a property settlement because they are made by the corporation in the first instance, and by Tapscott only if the corporation fails to pay; (2) that the parties did not intend for the weekly payments to be spousal support; and (3) that the guaranty by Tapscott does not permit the payments to be recharacterized as spousal support.  Additionally, Tapscott and Sports Supplement argue that Rinehart is estopped from asserting that the payments are spousal support because she waived that right in the Marital Agreement.

The Trustee argues that the payments are in the nature of maintenance and support based on the four factor test adopted by this Court in Catron.  Additionally, Philips argues that Tapscott is estopped from arguing that the payments are not maintenance and support because he signed the agreement that states that the payments are maintenance and support.

### III.

The arguments pertaining to estoppel are perplexing. Neither party identifies the theory of estoppel on which the argument is based (e.g. equitable, quasi, judicial), and neither party cites any authority to support the estoppel argument.  For that reason alone, the estoppel arguments can be rejected.  In any event, there is no merit to either party's estoppel argument.

The Trustee, who represents interests adverse to Rinehart, brought the adversarial proceedings below to determine the extent of the bankruptcy estate.  The Trustee, not Rinehart, contends that the payments are in the nature of alimony.  Under any theory of estoppel, the Trustee cannot be estopped by the promises made by Rinehart in the Marital Agreement.  Nor does estoppel bar Tapscott's contract contentions.  Tapscott signed the Marital Agreement which says in capital letters "WIFE, THEREFORE, WAIVES ANY AND ALL CLAIM TO SUPPORT AND MAINTENANCE FOR HERSELF. . ." (Marital Agreement p.11.)  The language just cited from the agreement demonstrates that Tapscott has a colorable argument that he believed the agreement relieved him from paying any support or maintenance to Rinehart.  While, on these facts,  Tapscott is wrong - as is discussed below - he cannot be estopped from making his colorable argument.  Hence, the estoppel arguments are rejected.  To the substance of the case, we now turn.

**IV.**

The first <u>Kettner</u> factor looks to the substance and language of the Marital Agreement.  <u>See Catron</u>, 164 B.R. at 919.  In doing so, a court examines:

> [w]hether an agreement is labeled "property settlement" or "support agreement," the form of the payments (<u>i.e.</u>, whether payments are monthly or in one lump sum), whether payments are made directly to the spouse, whether the payments terminate on the death of the spouse, whether the document treats the provision as a support agreement for tax purposes, and whether the agreement is drafted by an attorney and is well structured with separate provisions detailing spousal support and property rights.

<u>Id.</u> (quoting <u>Kettner</u>, 1991 WL 549386 (E.D. Va. 1991)).

In the "Waiver of Other Rights to Support and Maintenance" section, which follows several pages after the "Division of Marital Property" section, the Marital Agreement states that Rinehart "acknowledges that the foregoing provisions for her, together with her anticipated income from other sources will provide for her support and maintenance" and that the foregoing is fair and adequate.  The provision immediately thereafter states "WIFE, THEREFORE, WAIVES ANY AND ALL CLAIM TO SUPPORT AND MAINTENANCE FOR HERSELF. . ." (<u>Id.</u> at p.11.)

This language shows that the parties intended the payment provisions benefitting Rinehart in the "Disposition of Marital Property" section to "provide for her support and maintenance." While the label of the section refers to "Marital Property," the

controlling authority in this area is clear that labels are not dispositive of the parties intent.  <u>Tilley</u>, 789 F.2d 1077-78. The waiver section does not negate the payments, nor convert them into something different such as a severance agreement.  The provision simply waives any future claim to maintenance and support not provided for in the marital agreement that Rinehart might make against Tapscott.

Under the Marital Agreement, Sports Supplement payed Rinehart directly and weekly, and Tapscott guaranteed those payments.  The payments do not terminate when Rinehart becomes employed elsewhere, but are adjusted based upon her employment status and the age of Rinehart's daughter.  Testimony revealed that the parties made the payments payable by Sports Supplement in the first instance so that the payments would be considered as pre-tax expense for the corporation.  However, if the company defaulted, and the payments were made by Tapscott, they were to be treated as spousal support for tax purposes.[2]  Structuring the payments through the corporation created tax advantages for the parties. That structuring, however, does not hide the fact that the language of the Marital Agreement states that the payments were for Rinehart's support and maintenance.

---

[2] In fact, neither party claimed these payments as spousal support on their tax returns until litigation ensued, at which point Rinehart, on advice of counsel, claimed the payments.  This fact, of course, does not influence the determination reached here.

Tapscott and Sports Supplement also argue that the Marital Agreement was a property settlement because the debt does not terminate upon the death of the parties.  This assertion is not supported by the facts.  The Marital Agreement's weekly payment provision does not state what happens to the payments upon the death of either party.  In contrast, a separate provision in the Marital Agreement addressing the potential future sale of Sports Supplement provides that Rinehart is to receive 15 percent of the gross sale price.  If Rinehart died before the sale, her share would pass to her daughter.  Measured against the sale provision, the absence of a provision governing disbursement of the weekly payments after Rinehart's death indicates that the payments would cease upon her death.   If the payments were in the nature of a property settlement, they would be an asset that survives Rinehart's death.  The absence of a provision similar to the inheritance provision of the sale clauses demonstrates that the payments are in the nature of spousal support payments, which do not survive the death of the recipient spouse. See, e.g., Radford v. Radford, 433 S.E.2d 35, 36 (Va. App. 1993) ("we hold that spousal support provided for in an agreement terminates upon the remarriage or death of the person to whom the support is payable, unless the agreement expressly provides for its continuation.").

Tapscott and Sports Supplement contend that the testimony at trial indicated that the parties did not intend the payments to be

for spousal support. However, they cite no testimony from the trial to support this assertion. Moreover, Rinehart actually testified that the purpose of the payments was "for my basic living expenses," and that the couple determined the amount of the payments when "we both sat down and wrote out all our expenses, what we would be able to afford after, you know, everything." (Tr. 31:8; 32:3.) Tapscott agreed, stating that "we both sat down and figured it out. We compared out expenses, like she said." (Tr. 140:8-9.) These statements reflect the plain language of the agreement and the conclusion reached by the Bankruptcy Court.

It is true that the Marital Agreement, which contains a section devoted to "Disposition of Marital Property," does not also have a separate section that independently provides for support and maintenance. However, the "Waiver of Other Rights to Support and Maintenance" section indicates that the payment provisions benefitting Rinehart in the marital property section are support and maintenance. This further confirms that the parties intended the provision to provide spousal support.

Tapscott and Sports Supplement assert, that because the debt was owed by a corporation, it cannot be in the nature of spousal support. However, they cite no authority to support that contention. Courts that have examined the issue have scrutinized the purpose and intent behind the agreement rather than relying on

whether the payor is a person or an entity.  See, e.g., Gerdes v. Gerdes, 33 B.R. 860 (Bankr. S.D. Ohio 1983) ("Even though the payments via the wholly owned corporation of Plaintiff may not strictly speaking constitute alimony payments from Plaintiff, the Plaintiff's guarantee of the payments does."); In re Teter, 14 B.R. 434 (Bankr. N.D. Tx. 1981) (defendant's use of wholly owned corporation to make spousal payments was for tax reasons and held to be alimony).  Based on the foregoing analysis, the first Kettner factor weighs heavily in favor of Philips' position and the bankruptcy court's ruling.

The second Kettner factor looks to the financial situation of the parties at the time of the agreement.  See Catron, 164 B.R. at 919.  For this factor, the Court examines:

> whether one spouse was employed in a less remunerative position than the other, the stability of income of the spouse (i.e., whether the spouse earns a straight salary or whether the salary is comprised of a salary and a bonus that fluctuates), and whether one spouse has custody of the other spouse's minor children.

Id. (quoting Kettner, 1991 WL 549386 *2-3).  As part of the agreement, Rinehart resigned from her position at Sports Supplement while Tapscott remained the sole owner of Sports Supplement.  Rinehart received weekly payments from Sports Supplement of $600 per week until she was gainfully employed as a dog breeder in August 2002, at which point she received $250 per week.  Once her daughter turned 18 years old, the payments were to

13

increase to $400 a week because Rinehart would stop receiving child support payments. However, the record contains little evidence concerning the relative financial positions of Tapscott, Rinehart, and Sports Supplement. The couple owned three cars (a 1962 Corvette, 1973 Corvette, 2001 Chrysler P.T. Cruiser), their home in Powhatan, Virginia, Rinehart's IRA, Tapscott's IRA, furniture and personal property, and their interests in Sports Supplement. However, the record is devoid of clear evidence showing the relative financial status of Tapscott, Rinehart, or Sports Supplement. Thus, conclusions as to the financial situation of the parties cannot be determined.

The third factor examines the function served by the obligation at the time of the agreement. When examining the third factor, "[t]he court may consider such factors as the length of the marriage, the standard of living during the marriage, and any periods of separation during the marriage . . .. The court may also examine the statements of the spouses in determining the purpose for which payments are intended." Catron, 164 B.R. at 919. "An agreement that serves to provide such daily necessities as food, clothing, shelter, and transportation is indicative of debt intended to be in the nature of support." Id.

The parties had been married for seven years, and, as cited above, the Marital Agreement states that the purpose of the payments was to support and maintain Rinehart in the lifestyle to

which she had been accustomed.  Functionally, then, the payments were for Rinehart's normal life expenses, and they were not completely reduced when Rinehart became employed.

Tapscott and Sports Supplement argue that the payments were in the nature of a severance.  It is true that the Marital Agreement states that Rinehart will receive the payments in consideration for resigning from the corporation and that the payments were made by the corporation, using the same method and pay period used by the corporation to pay its employees.  However, the Trustee argues that, had the payments been a severance, they likely would not be tied to Rinehart's employment status or her receipt of child support, would have set a termination date, and would likely have included an inheritance provision in the event Rinehart died prior to full receipt of the severance payments. These characteristics, in addition to the agreement's plain language stating that the payment were for Rinehart's support and maintenance, demonstrate that the payments function as support and maintenance.

The fourth factor examines whether there is evidence of overbearing at the time of the agreement that should cause the court to question the intent of the spouse.  Id. (quoting Kettner, 1991 WL 549386 *2-3).  Neither party raised any issue of overbearing during the divorce process, and nothing in the record or briefing here indicates any overbearing by either party.

Having reviewed the arguments of the parties, and the four factors used by this Court, the Court concludes that the Bankruptcy Court's findings of fact are not clearly erroneous, and the record demonstrates that the weekly payments were intended for spousal support and not in the nature of a property settlement.

For the foregoing reasons, the decision of the Bankruptcy Court is AFFIRMED.

It is so ORDERED.


_____/s/_____
 Robert E. Payne
 United States District Judge


Richmond, Virginia
Date: July 26, 2006